No. 26-1910

# United States Court of Appeals for the First Circuit

PETER RUMBIN,
*Plaintiff-Appellant,*

*v.*

SCOTT BESSENT, in his official capacity as Secretary of the Treasury; U.S. DEPARTMENT OF EDUCATION; SHERI CANN, in her official capacity as CEO and President of F.H. Cann & Associates; ELLEN PATTERSON, in her official capacity Senior Executive Vice President and General Counsel of Wells Fargo & Co.; ROBERT N. HOCHMAN, in his official capacity as Vice President and General Counsel of the University of Chicago,
*Defendants-Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS, THE HON. ALLISON D. BURROUGHS (DIST. CT. NO. 1:26-CV-10247-ADB)

**BRIEF OF APPELLEE ROBERT N. HOCHMAN, in his official capacity as Vice President and General Counsel of the University of Chicago**

Alexandra Arnold (#1205706)
Daniel J. Cloherty (#65283)
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
(617) 481-0606
aarnold@clohertysteinberg.com
dcloherty@clohertysteinberg.com

**September 28, 2026**

## TABLE OF CONTENTS


Table of Authorities ........ 3

Corporate Disclosure Statement ........ 5

Statement Regarding Oral Argument ........ 6

Statement of Jurisdiction ........ 7

Statement of the Issues ........ 7

Statement of the Case ........ 8

I. Rumbin's Original Student Loans ........ 8

II. The 1989 Department of Education Action Against Rumbin ........ 9

III. The 2011 Rumbin Action against the United States and the University ........ 10

IV. The *Sweet v. Cardona* Class Action Against the Department of Education ........ 11

V. This Action and the Decision Below ........ 12

Summary of the Argument ........ 14

Argument ........ 15

I. Rumbin Has Waived Any Challenge to the Dismissal of His Claims Against the University ........ 16

II. The Complaint States No Claim Against the University ........ 18

III. Rumbin's "Foreign Judgment" Theory Fails, and He Does Not Defend It ........ 21

IV. The Complaint Is Barred by Claim Preclusion, Issue Preclusion, and the Statute of Limitations ........ 23

V. The District Court Did Not Abuse Its Discretion in Not Granting Leave to Amend ........ 26

Conclusion ........ 27

Certificate of Compliance ........ 28

Certificate of Service ........ 29

Addendum ........ 30

# TABLE OF AUTHORITIES

## Cases

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
732 F.3d 77 (1st Cir. 2013) ........ 14, 15, 18

*Ahmed v. Rosenblatt*,
118 F.3d 886 (1st Cir. 1997) ........ 15, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 18

*DaLuz v. Dep't of Correction*,
434 Mass. 40 (2001) ........ 24

*Eagle Eye Fishing Corp. v. U.S. Dep't of Com.*,
20 F.3d 503 (1st Cir. 1994) ........ 15

*Haley v. City of Boston*,
657 F.3d 39 (1st Cir. 2011) ........ 15

*Heacock v. Heacock*,
402 Mass. 21 (1988) ........ 22

*Kobrin v. Bd. of Registration in Med.*,
444 Mass. 837 (2005) ........ 22, 24

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........ 12, 21

*Morales–Cruz v. Univ. of P.R.*,
676 F.3d 220 (1st Cir. 2012) ........ 18

*Nikitine v. Wilmington Tr. Co.*,
715 F.3d 388 (1st Cir. 2013) ........ 15

*O'Neill v. City Manager of Cambridge*,
428 Mass. 257 (1998) ........ 22

*Rivera–Gomez v. de Castro*,
843 F.2d 631 (1st Cir. 1988) ........ 17

*Royal Bus. Grp., Inc. v. Realist, Inc.*,
933 F.2d 1056 (1st Cir. 1991) ........ 25

*Rumbin v. DeVos*,
590 U.S. 905 (2020) .......... 10

*Rumbin v. Duncan*,
No. 18-3488, 2019 WL 11689797 (2d Cir. July 8, 2019).......... 10

*Rumbin v. Duncan*,
No. 3:11-cv-00904, 2014 WL 2881397 (D. Conn. June 25, 2014) ..........passim

*Sparkle Hill v. Interstate Mat Corp.*,
788 F.3d 25 (1st Cir. 2015) .......... 17

*Sweet v. Cardona*,
No. 3:19-cv-03674 (N.D. Cal. Jun. 25, 2019).......... 10, 21

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
360 F.3d 220 (1st Cir. 2004) .......... 19

*United States v. Rumbin*,
No. N–89–522 (D. Conn. Oct. 17, 1989).......... 8

*United States v. Zannino*,
895 F.2d 1 (1st Cir. 1990) ..........15, 17, 20

**Rules**

Fed. R. Civ. P. 7(b)(1) .......... 26

Fed. R. Civ. P. 8(a).......... 18

Fed. R. Civ. P. 9(b) .......... 20

## CORPORATE DISCLOSURE STATEMENT

The University of Chicago is a not-for-profit corporation with no parent corporation, and no publicly held corporation owns 10% or more of its stock. Robert N. Hochman is an individual.

## Statement Regarding Oral Argument

The University of Chicago respectfully submits that oral argument is unnecessary because this appeal is frivolous; the dispositive issues have been authoritatively decided; and the facts and legal arguments are adequately presented in the briefs and record. *See* Fed. R. App. P. 34(a)(2); 1st Cir. R. 34.0(a)(2). If the Court concludes that argument would assist it in addressing the issues on appeal, the University requests the opportunity to participate.

## STATEMENT OF JURISDICTION

Rumbin filed this action in the Massachusetts Superior Court for Essex County on July 29, 2025. Add. 5. The federal defendants removed it to the United States District Court for the District of Massachusetts on January 21, 2026. *Id.* The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, 1441, and 1442(a)(1).

On July 22, 2026, the district court granted all four pending motions to dismiss and dismissed Rumbin's complaint in its entirety. Add. 1-2, 15. That order disposed of all claims as to all parties and is final. Rumbin filed a timely notice of appeal. *See* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether Rumbin has waived appellate review of the dismissal of his claims against the University of Chicago (specifically, against Robert N. Hochman, in his official capacity as Vice President and General Counsel of the University of Chicago) (the "University"), where his opening brief devotes two sentences to the University, identifies no error in the district court's reasoning, cites no authority bearing on the claims against the University, and never mentions the district court's separate holding rejecting his "foreign judgment" theory.

2. Whether the district court correctly held that the complaint fails to state a claim against the University, where it contains no counts, identifies no causes of action, does not distinguish among five defendants, and rests its fraud and

embezzlement allegations on labels rather than the particulars required by Fed. R. Civ. P. 9(b).

3. Whether the district court correctly held that a letter from the Department of Education notifying Rumbin that his borrower-defense application had been approved is not a judgment enforceable against the University.

4. Whether, in any event, the district court's order must be affirmed because Rumbin's claims arise from the same 1977–1979 events already litigated to final judgment in the University's favor in *Rumbin v. Duncan* and are barred by claim preclusion, issue preclusion, and every conceivably applicable statute of limitations.

5. Whether the district court abused its discretion by declining to grant, *sua sponte*, a leave to amend that Rumbin never requested, where amendment would in any event be futile as to the University.

## STATEMENT OF THE CASE

### I. Rumbin's Original Student Loans

According to the complaint and its accompanying documents, Rumbin attended the University for one year in 1977-1978 and received federal student aid in the form of a Basic Educational Opportunity Grant (BEOG, now "Pell" grant). Add. 2. & n.1. In March 1977, the University made him a National Direct Student Loan

(NDSL) of $1,650, which it administered. *Id.*; ECF No. 14-1 at 37-45.[1] He separately obtained two Guaranteed Student Loans (GSLs) of $2,500 each through the Connecticut Savings Bank—one in October 1977 and one in December 1978. Add. 2; ECF No. 14-1 at 46-49. The University did not originate, hold, service, nor guarantee the GSLs. *Rumbin v. Duncan*, No. 3:11-cv-00904, 2014 WL 2881397, at *6 (D. Conn. June 25, 2014).[2] Rumbin alleges that the University did not credit the grant funds towards his tuition bill and instead "pocketed the funds," requiring him to borrow more than he otherwise would have and, ultimately, to withdraw from the University and transfer to Harvard. Add. 3. After Rumbin failed to make any payments on his NDSL, ECF No. 14-1 at 45, the University assigned that loan to the United States Department of Education ("ED").

## II. The 1989 Department of Education Action Against Rumbin

In 1989, ED sued Rumbin in the District of Connecticut to collect on the NDSL debt. *See* Compl. at 1-2; *see also United States v. Rumbin*, No. N–89–522 (D. Conn. Oct. 17, 1989) (the "1989 Action"). The 1989 Action settled in 1990, Rumbin's

[1] Because Rumbin filed no appendix, *see* 1st Cir. Loc. R. 30.0(d)(1) (an unrepresented party is exempt from filing an appendix), this brief cites to the district court docket as "ECF No. __."

[2] In reviewing a motion to dismiss, this Court may consider judicially noticeable records of prior judicial proceedings. *See In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15–16 (1st Cir. 2003); *see also* Fed. R. Evid. 201(c)(2), (d) (requiring a court to take judicial notice if a party requests it and the court is supplied with the necessary information and at any stage of the proceeding).

NDSL was discharged, and Rumbin agreed to hold the United States and ED harmless from "any and all lawsuits or claims of any character whatsoever, in connection with the subject matter or institution of this action." ECF No. 14-1 at 20-21.

## III. The 2011 Rumbin Action against the United States and the University

In 2011, ED sought to recover the amounts due on Rumbin's GSLs through Treasury offsets, including Social Security garnishments. *See id.* at 6, 17-18. Rumbin believed that this effort violated the settlement in the 1989 Action relating to the NDSL and filed suit in the District of Connecticut against the United States through then-Secretary of Education Arne Duncan and then-Treasury Secretary Timothy Geithner, as well as against the University and the University's then-General Counsel. *See Rumbin v. Duncan*, No. 3:11-cv-00904 (D. Conn. Jun. 3, 2011), Dkt. No. 1 (the "2011 Action").

Notably, in the 2011 Action, Rumbin made the same allegations against the University that he makes here. *Rumbin*, 2014 WL 2881397, at *6. Specifically, he "challenge[d] directly the Treasury Department's administrative enforcement of the GSL loans" and alleged that "the University fraudulently induced [him] to take out the student loans which remain unpaid and generate the Treasury's deductions from his benefits." *Id.*

On June 25, 2014, the court granted summary judgment to the University and its General Counsel, holding (1) that the University did not originate the GSLs and

played no part in declaring them in default; (2) that the University "cannot be called upon to answer for the actions of the Government in exercising administrative enforcement"; (3) that Rumbin was aware by 1989 of the facts underlying his fraud allegations against the University; and (4) that, because he did not assert those claims until 2011, they were "barred by any applicable statute of limitations." *Id.* The Second Circuit dismissed Rumbin's appeal because it lacked "an arguable basis either in law or fact," *Rumbin v. Duncan*, No. 18-3488, 2019 WL 11689797, at *1 (2d Cir. July 8, 2019), and the Supreme Court denied certiorari, *Rumbin v. DeVos*, 590 U.S. 905 (2020).

## IV. The *Sweet v. Cardona* Class Action Against the Department of Education

Separately, in 2019, Rumbin participated in the *Sweet v. Cardona* class action, in which a large group of borrowers alleged that ED had ignored or delayed processing their borrower-defense claims, which they had filed after allegedly being misled or defrauded by their schools. *See Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Jun. 25, 2019), Dkt. No. 1. That class action resulted in a settlement that provided full loan forgiveness, potential refunds, and credit repair for eligible borrowers who filed borrower defense claims related to certain institutions of higher education. *See id.* at Dkt. No. 246-2. On March 24, 2025, Rumbin received a letter notifying him that ED would discharge his federal student loans associated with his enrollment at the University and refund any payments made, per the settlement agreement. *See* ECF No. 14-1 at 17.

## V. This Action and the Decision Below

Rumbin filed this action in Essex Superior Court on July 29, 2025. Add. 5. The complaint purports to assert claims against the University, through its General Counsel, as well as against ED, the U.S. Treasury, and assorted private parties, and it seeks, among other things, (a) "execution of judgment upon the defendants for all outstanding debts claimed by them," (b) a declaration that he owes no student-loan debt now or in the future, (c) return of all funds ever offset or seized, and (d) a "counter suit on predatory lending, Dodd-Frank Consumer Protection Act or other applicable laws" spanning 48 years of alleged misconduct. ECF No. 14-1 at 10-12.

On December 10, 2025, while the matter was still pending in state court, the University moved to dismiss. Add. 5. Defendants Cann and Patterson likewise moved to dismiss. *Id.* On January 21, 2026, the federal defendants removed, and they moved to dismiss a week later. *Id.* On July 22, 2026, the district court granted all four motions and dismissed the complaint. Add. 15.

As to the University, the district court first held that the complaint did not satisfy the applicable pleading rules. The court observed that Rumbin "fail[ed] to identify any specific claims against any of the named Defendants," "[did] not set forth individual counts describing the legal causes of action he [sought] to assert or the factual grounds" supporting them, and offered an account so "discombobulated" that it was "difficult to ascertain his past or present factual situation." Add. 9 & n.6. The court further concluded that Rumbin's allegation that the University committed fraud

and embezzlement by keeping his grant funds—"particularly concerning conduct that presumably took place 50 years ago"—was too vague to satisfy Federal Rule of Civil Procedure 9(b). Add. 9.

Second, the court rejected Rumbin's theory that ED's March 24, 2025 letter, along with the stipulation of dismissal in ED's 1989 Action, somehow operate together as a "foreign judgment" requiring the immediate and universal discharge of all his student loan debts. The court explained that Rumbin "has not filed a copy of any judicial record with a clerk attestation and certificate of a judge of the court that the attestation is in proper form," as 28 U.S.C. § 1738 requires, and that "[b]ecause the notice does not include the requisite attestation or judicial certificate, the Court cannot enforce it as a foreign judgment." Add. 14. It added that any attempt to enforce the *Sweet* settlement itself would require an independent basis for jurisdiction that Rumbin had not established. Add. 14 n.10 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994)).

Rumbin appealed. His opening brief runs seven pages. It asks the Court to "reverse the decision of Judge Allison D. Burroughs to grant the Federal Defendants' Motions to dismiss" and makes two arguments: (1) that because the district court was able to summarize his allegations, he stated a claim (or, alternatively, that the court erred in dismissing his complaint without first affording him leave to amend) and (2) that the federal defendants cannot invoke sovereign immunity. Appellant's Br. 2-5.

The University is mentioned in one paragraph, in two sentences quoting the district court's opinion. *Id.* at 2-3.

## SUMMARY OF THE ARGUMENT

1. Rumbin has not preserved a challenge as to the University. His brief mentions the University in two sentences, and those sentences are quotes from the district court's summary of Rumbin's own allegations. He offers no argument that the district court misapplied Rules 8, 9(b), or 12(b)(6) of the Federal Rules of Civil Procedure; he cites no authority addressed to the claims against the University; and he never mentions the court's separate holding that the documents he calls a "foreign judgment" are not in fact judgments. This alone supports affirmance as to the University.

2. The dismissal was correct in any event. Rumbin's single substantive contention—that the district court must have found a claim stated because it was able to restate his allegation—mistakes what the Federal Rules of Civil procedure require. A complaint does not survive because a judge can summarize it; it survives if it identifies a legal theory and pleads facts that, taken as true, make the elements of that theory plausible. Rumbin's complaint names no cause of action, assigns no actionable conduct to any particular defendant, and supports its fraud and embezzlement labels with nothing resembling the who, what, when, and where that Rule 9(b) demands.

3. The "foreign judgment" theory fails for the reasons the district court gave, where the March 2025 letter is an agency notice, not a judicial record, and

carries none of the authentication 28 U.S.C. § 1738 requires. And even a properly authenticated judgment would not bind the University, which was not a party to *Sweet v. Cardona* and not a party to the 1990 stipulation. A judgment cannot be enforced against a stranger to it.

4. Independently, the district court's order must be affirmed because Rumbin's claims were decided twelve years ago. In *Rumbin v. Duncan*, the District of Connecticut entered summary judgment for the University on the same allegations about the same grant and the same loans, holding both that the University had no role in the conduct complained of and that the claims were time-barred. The Second Circuit dismissed the appeal, and the Supreme Court denied certiorari. Claim preclusion and issue preclusion bar this suit, as does every limitations period that could conceivably apply to conduct that occurred in 1977–1979 and that Rumbin concededly knew about by 1989.

5. Finally, the district court did not abuse its discretion in not granting leave to amend where Rumbin never moved to amend and never tendered a proposed amended complaint. Moreover, amendment would be futile: no pleading, however artful, can undo a final judgment or restart a limitations period that expired decades ago.

## Argument

This Court "review[s] de novo a district court's dismissal of a complaint for failure to state a claim," accepting well-pleaded facts as true and drawing reasonable

inferences in the plaintiff's favor, while disregarding conclusory legal assertions. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). The Court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). A denial of leave to amend is reviewed for abuse of discretion. *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 389 (1st Cir. 2013).

While a pro se complaint is construed liberally, "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) (citing *Eagle Eye Fishing Corp. v. U.S. Dep't of Com.*, 20 F.3d 503, 506 (1st Cir. 1994)). Liberal construction means reading a filing generously; it does not mean supplying the legal theory, the facts, or the argument that the litigant has not. *Id.*

## I. Rumbin Has Waived Any Challenge to the Dismissal of His Claims Against the University

This Court has long held that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Here, Rumbin makes two arguments, only one of which is relevant to the University: that because the district

court was able to summarize his allegations, his complaint stated a claim.[3] Appellant's Br. 3.

The University appears twice in Rumbin's brief, both times in quotations from the district court's opinion summarizing Rumbin's own allegations:

> In the Memorandum and Order dated July 22, 2026, Judge Burroughs states on page 2 "Plaintiff obtained the GSLs through the Connecticut Savings Bank" and "Plaintiff claims that after his first year at the University of Chicago, he was unable to secure additional funding, and as a result, was forced to withdraw and transfer to Harvard University."
>
> And as to a claim of action against the University of Chicago, Judge Burroughs states on page 3 of the Memorandum and Order that "Plaintiff alleges that the University of Chicago did not credit the Pell grant funds toward his education bill, and instead, "pocketed the funds".

*Id.* at 2-3. That is the whole of it. Rumbin does not contend that the district court applied the wrong standard, misread the complaint, overlooked an allegation, or erred in finding the fraud allegations insufficiently particular. He does not cite to any authority concerning fraud, embezzlement, predatory lending, or any other issues bearing on his supposed claims against the University. And he makes no mention of the district court's separate holding, addressing the University's argument, that the March 2025 letter is not an enforceable judgment. Add. 13–14.

A court of appeals reviews the reasoning of the court below; where an appellant identifies no flaw in that reasoning, the appellee is left to guess at the case it

[3] In the alternative, he argues that the court ought to have given him an opportunity to amend his complaint prior to dismissal. *Id.* That argument is addressed in *infra* at Section V.

must answer, and the court has nothing to review. *See Zannino*, 895 F.2d at 19 (quoting *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace"). Where Rumbin has failed to develop any challenge to the district court's reasoning, this Court should affirm. *See Sparkle Hill v. Interstate Mat Corp.*, 788 F.3d 25, 29 (1st Cir. 2015) ("Our precedent is clear: we do not consider arguments for reversing a decision of the district court when the argument is not raised in a party's opening brief").

## II. The Complaint States No Claim Against the University

Should this Court reach the merits—which it should not—the district court was plainly correct.

*First*, as the district court concluded, the complaint fails to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint is a continuous narrative with no counts; it names five defendants—a federal agency, cabinet officers, a collection agency executive, a bank's general counsel, and a university's general counsel—and never separates what each is said to have done; and it invokes "predatory lending," "embezzlement," and "fraud" without tying any of those words to identified conduct by the University at an identified time, and without naming the legal theory under which any of them would be actionable. Indeed, as the district court noted, Rumbin's "account of relevant

events is discombobulated to the point where it is difficult to ascertain his past or present factual situation." Add. 9 & n.9.

*Second*, Rumbin misstates what the Federal Rules of Civil Procedure require. He reasons that, because the district court could describe his allegations that the University retained Pell grant funds, it necessarily identified a sufficient cause of action. Appellant's Br. 3. But the measure of a well-pleaded claim is not whether a judge can summarize it. Rather, the question is whether, after separating factual allegations from "conclusory legal allegations (which need not be credited)," the remaining content permits a "reasonable inference that the defendant is liable for the misconduct alleged." *Maddox*, 732 F.3d at 80 (quoting *Morales–Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, where Rumbin alleges only that the University "did not credit the Pell grant funds toward his education bill, and instead, 'pocketed the funds,'" Add. 3, he has failed to state a claim. The complaint does not allege what the University was obligated to do with the grant funds, what it did instead, at whose direction, or when; nor does it identify any duty the University owed Rumbin, any breach of that duty, or any causal chain running from a 1977 financial aid determination to a presently cognizable injury. On Rumbin's theory, every complaint would state a claim so long as a judge could paraphrase it. That is not the rule.

*Third*, and relatedly, Rumbin's fraud and embezzlement allegations are insufficient under Rule 9(b), which requires a party alleging fraud to "state with

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That means that a plaintiff must "specify the time, place, and content of the alleged false or fraudulent representations." *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004). As described above, Rumbin's allegations are limited to conclusory statements, such as that the University "pocketed the funds." As the district court noted, "these vague assertions—particularly concerning conduct that presumably took place 50 years ago—are insufficient to meet the heightened pleading requirements applicable to all claims of fraud." Add. 9.

*Finally*, the University cannot grant Rumbin any of the relief he seeks: discharge of his obligations, refunds of payments on federal student loans, and correction of associated credit reporting. The University assigned Rumbin's NDSL to ED in 1989 and undertook no collection effort thereafter; following the 1990 stipulation, that loan was written off and the account closed more than thirty-five years ago. Add. 3 & n.2; *Rumbin*, 2014 WL 2881397, at *6. The GSLs that were the subject of the 2011 offsets were originated through a private lender and guaranteed by third parties; the University neither issued nor serviced them and never held them as a creditor. *Id.* Rumbin has in any event already obtained the relief he seeks from the entity that can provide it: the March 2025 letter advised him that the covered loans would be discharged, that payments would be refunded, and that the associated credit tradeline would be deleted. Add. 4.

In short, Rumbin's complaint does not tell the University what it is alleged to have done, when, or under what legal theory, and it demands of the University relief that only the federal government can provide. No amount of liberal construction can rewrite the complaint to supply what is missing or to confer on the University a power it does not have. *See Ahmed*, 118 F.3d at 890.

## III. Rumbin's "Foreign Judgment" Theory Fails, and He Does Not Defend It

The complaint's organizing theory was that the 1990 stipulation of dismissal in the 1989 Action and the March 2025 letter that Rumbin received regarding ED's discharge of his federal student loans associated with his enrollment at the University operate together as a "foreign judgment" that a court must enforce, discharging all of Rumbin's debts and absolving him "of any financial liability whatsoever now and in the future." Add. 4. Rumbin's brief does not defend that theory or mention the district court's rejection of it. As discussed above, the argument is accordingly waived. *Zannino*, 895 F.2d at 17. It is also wrong.

As the district court explained, the March 2025 letter is not a judicial record. Full faith and credit attaches to "records and judicial proceedings" authenticated by the attestation of a clerk and the certificate of a judge. 28 U.S.C. § 1738; *see* U.S. Const. art. IV, § 1. Registration under 28 U.S.C. § 1963 is available for a "judgment in an action for the recovery of money or property" entered by a federal court. The March 2025 letter is neither. It bears no caption, no clerk's attestation, and no judicial

certificate; it is an agency's notice to a borrower that his application has been approved, complete with a hotline number for follow-up questions. Add. 4 & n.3, 14.

The 1990 stipulation fares no better. A stipulated dismissal is the parties' agreement to end a case, not an adjudication: it resolves nothing on the merits, awards nothing, and directs no one to pay anything. *See* ECF No. 14-1 at 20-21.

Moreover, neither of the documents could bind the University even if they were judgments, because the University was not a party to the proceedings that produced them. The 1989 Action was a suit brought by ED against Rumbin for nonpayment of his NDSL, and the stipulation imposed no obligation on the University and conferred on Rumbin no right against it. Meanwhile, *Sweet v. Cardona* was a class action by borrowers against ED complaining of ED's failure to process borrower-defense applications. The University was not a defendant, and the settlement imposes no duties on schools. *See Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Jun. 25, 2019), Dkt. No. 1. To the extent Rumbin seeks to enforce that settlement, jurisdiction over such a claim would have to be established independently, and it was not. Add. 14 n.10 (citing *Kokkonen*, 511 U.S. at 378).[4]

[4] Rumbin has asserted at various points that the University was "found guilty of predatory lending" in *Sweet*. ECF No. 14-10 at 2. No such finding exists. No court has ever entered any judgment or made any finding of wrongdoing against the University in this decades-long dispute.

## IV. The Complaint Is Barred by Claim Preclusion, Issue Preclusion, and the Statute of Limitations

Rumbin's claims against the University are also barred by the doctrines of claim preclusion and issue preclusion in light of the prior federal litigation in the District of Connecticut, in which summary judgment entered in the University's favor on Rumbin's claims arising out of the same student loans that he now seeks to revisit. *See Rumbin*, 2014 WL 2881397, at *6. Moreover, as the District of Connecticut already ruled, his claims are time barred. *Id.*

"Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the [prior] action." *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843-44 (2005) (quoting *O'Neill v. City Manager of Cambridge*, 428 Mass. 257, 259 (1998)). "Similarly, issue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.'" *Id.* (quoting *Heacock v. Heacock*, 402 Mass. 21, 23 n.2 (1988)).

As described above, Rumbin has already litigated his University-related student-loan and financial-aid allegations in the District of Connecticut, and judgment has entered in the University's favor. Specifically, in *Rumbin v. Duncan*, Rumbin sued the University and its then-General Counsel, alongside various federal defendants, asserting that offsets against his Social Security benefits were improper because,

among other things, the University had mishandled his Pell grant and had fraudulently induced him to take loans in the late 1970s. *See* 2014 WL 2881397, at *3. The District Court granted the University summary judgment, finding:

> The University of Chicago and its student loan administrator, Beth Harris, are clearly entitled to summary judgment dismissing Plaintiff's complaint against them. To the extent that Plaintiff challenges directly the Treasury Department's administrative enforcement of the GSL loans, the University did not originate those loans, and played no part in declaring them in default. In any event, the University cannot be called upon to answer for the actions of the Government in exercising administrative enforcement.
>
> The broader charge Mr. Rumbin makes against the University and Ms. Harris is that the University fraudulently induced Rumbin to take out the student loans which remain unpaid and generate the Treasury's deductions from his benefits.
>
> It is apparent from the pleadings in the Government's 1989 Action against him that at that time, Mr. Rumbin was aware of the facts and circumstances which underlie his claims of fraud and related misconduct on the part of the University defendants. He did not assert those claims against those defendants until he filed the present action in 2011.
>
> In these circumstances, Plaintiff's claims against the University and Harris are barred by any applicable statute of limitations.

*Id.* at *6.

Rumbin's current allegations regarding the University's alleged "predatory lending," its alleged mishandling of Pell grant funds, and its role in his student loans necessarily arise from the same nucleus of operative facts as the claims he asserted in the 2011 Action and in which the District Court granted the University summary judgment. *Id.* The three elements essential for invocation of claim preclusion—"(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits"— are all satisfied here,

and Rumbin may not now repackage those same grievances in a different venue. *See DaLuz v. Dep't of Correction*, 434 Mass. 40, 45 (2001).

Issue preclusion likewise bars Rumbin from relitigating his decades-old complaints. For issue preclusion to apply, "a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." *Kobrin*, 444 Mass. at 843-44. As the summary judgment decision in the 2011 Action makes clear, the district court's determinations that the University no longer holds any student-loan debt owed by Rumbin and has no responsibility for the federal offsets or collection activity of which he complains were essential to the judgment. *See generally Rumbin*, 2014 WL 2881397. Because Rumbin had a full and fair opportunity to litigate those issues in the 2011 Action, he cannot now proceed on a theory that the University is liable for ongoing debt-collection actions or must now pay damages or refunds on loans no longer in its possession. *See Kobrin*, 444 Mass. at 843-44 (2005).

In addition, as the District Court concluded in the 2011 Action, any conceivable claim against the University based on events in the 1970s and 1980s is time-barred. *See Rumbin*, 2014 WL 2881397, at *6.

## V. The District Court Did Not Abuse Its Discretion in Not Granting Leave to Amend

Rumbin's remaining argument is that he "should have been given an opportunity to take leave of court to amend his complaint," and that he "was never afforded such an opportunity." Appellant's Br. 3. The premise of this argument appears to be that the district court refused Rumbin leave to amend, but that is not the case: he never sought it. Rumbin filed no motion to amend, tendered no proposed amended complaint, and did not request leave in his various filings opposing the four motions to dismiss. A request for a court order must be made by motion, Fed. R. Civ. P. 7(b)(1), and a party who never asks the district court for relief cannot complain on appeal that the district court failed to grant it. *See Royal Bus. Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1066 (1st Cir. 1991).

In any event, even had Rumbin properly sought leave to amend, denial would have been proper because amendment is futile as to the University. As previously explained, the documents on which he relies adjudicate nothing against the University; his claims have already been litigated to final judgment; the limitations period has long expired; and the University cannot grant Rumbin the relief he seeks.

## CONCLUSION

For the foregoing reasons, this Court should affirm the order of the district court dismissing Rumbin's complaint against the University.

Respectfully submitted,

Robert N. Hochman, in his official capacity as
Vice President and General Counsel of the
University of Chicago

*By his attorneys,*

/s/ *Alexandra Arnold*

Alexandra Arnold (BBO #706208)
Daniel J. Cloherty (BBO #565772)
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
(617) 481-0160
aarnold@clohertysteinberg.com
dcloherty@clohertysteinberg.com

September 28, 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the rules of the Court that pertain to the filing of briefs, including Fed. R. App. P. 32. It is typewritten in 14-point, Garamond font, a proportionately spaced serif font, and contains 5,106 non-excluded words as counted by the word processing system used to prepare it.

/s/ *Alexandra Arnold*
Alexandra Arnold (BBO #706208)
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
(617) 481-0160
aarnold@clohertysteinberg.com

September 28, 2026

## CERTIFICATE OF SERVICE

I certify that on September 28, 2026, the foregoing brief and addendum was filed electronically and served electronically on all counsel of record, in accordance with and in the form required by Rule 31.0 of the Local Rules for the United States Court of Appeals for the First Circuit. In addition, this filing will be mailed to:

Peter Rumbin
87 Second Street
Hamden, CT 06514

/s/ *Alexandra Arnold*
Alexandra Arnold (BBO #706208)
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
(617) 481-0160
aarnold@clohertysteinberg.com

September 28, 2026

# ADDENDUM


| Document Description | Page No. |
|---|---|
| District Court Memorandum and Order, July 22, 2026 | Add. 1 |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PETER R. RUMBIN,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,<br><br>Defendants. | * * * * * * * * * * * * * | Civil Action No. 26-cv-10247-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Peter Rumbin ("Plaintiff") brings suit against multiple defendants, including the United States Department of Education (the "Department of Education"); Scott Bessent, Secretary of the United States Department of the Treasury ("Bessent") (together with the Department of Education, the "Federal Defendants"); Sheri Cann, CEO and President of F.H. Cann & Associates ("Cann"); Ellen R. Patterson, Senior Executive Vice President and General Counsel of Wells Fargo & Co. ("Patterson"); and Elizabeth Shanin, Interim Vice President and General Counsel of the University of Chicago ("Shanin") (collectively, "Defendants"), alleging unlawful conduct associated with student loans that he obtained approximately fifty years ago. [ECF No. 1-1 ("Complaint" or "Compl.")]. Currently pending before the Court are motions to dismiss by Patterson, [ECF No. 7], Shanin, [ECF No. 8], Cann, [ECF No. 16], and the Federal

Defendants, [ECF No. 9]. For the reasons discussed below, the Defendants' motions to dismiss are **GRANTED**.

## I. BACKGROUND

### A. Factual Background

The following facts are based on Plaintiff's Complaint unless otherwise noted. Although the Court accepts all well-pleaded factual allegations as true, it need not credit Plaintiff's conclusory legal assertions. See A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). In addition to "the facts alleged in the complaint," the Court may also consider "documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)).

Plaintiff attended the University of Chicago for one year from 1977 to 1978. [ECF No. 8-1 at 2]; see [Compl. at 1]. While at the University of Chicago, Plaintiff received what is now referred to as a Pell grant.[1] [Compl. at 2]; [ECF No. 8-1 at 2]. He also received a National Direct Student Loan ("NDSL") in the amount of $1,650 and two Guaranteed Student Loans ("GSLs") for $2,500 each. [ECF No. 8-1 at 2–3]; [ECF No. 14-1 at 53]. Plaintiff obtained the GSLs through the Connecticut Savings Bank. [ECF No. 8-1 at 2]; [Compl. at 2]. Plaintiff claims that after his first year at the University of Chicago, he was unable to secure additional funding and, as a result, was forced to withdraw and transfer to Harvard University. [Compl. at 2–3, 8].

---

[1] Specifically, Plaintiff received a Basic Educational Opportunity Grant (BEOG), which is now referred to as a Pell grant. [ECF No. 8-1 at 2]; [Compl. at 2].

Plaintiff alleges that the University of Chicago did not credit the PELL grant funds towards his education bill, and instead, "pocketed the funds," which required him to obtain student loans. [Compl. at 2]. Plaintiff also alleges that the Department of Education investigated the University of Chicago for "predatory lending" and embezzlement, and that the University of Chicago "returned" the PELL grant funds that it had purportedly embezzled but did not return the loan funds. [Id.]. Further, Plaintiff alleges that the University of Chicago requested that Plaintiff's parents obtain a second mortgage in order to secure additional funds, presumably for his education, but that the Connecticut Savings Bank denied this request. [Id.].

Plaintiff alleges that in 1989, the United States Department of the Treasury ("Treasury") and the Department of Education sued him in federal court for nonpayment of his NDSL and another student loan in the amount of $890. Id. at *2; [Compl. at 3]. Plaintiff says that the matter was resolved by a stipulated agreement to dismiss with prejudice (the "Stipulation") and that all of his student loans from the University of Chicago were included in the settlement.[2] [Id.]. According to Plaintiff, despite this agreement, in 2011, the Treasury began offsetting his income, which caused him significant hardships. [Id.].

In 2011, Plaintiff sued the Treasury, the Department of Education, and the University of Chicago in the United States District Court for the District of Connecticut. See generally Rumbin v. Duncan, No. 11-cv-00904, 2014 WL 2881397 (D. Conn. June 25, 2014). On June 25, 2014, the court granted summary judgment to the University of Chicago, see [id.], and on February 17, 2016, granted the Department of Education and the Treasury's renewed motion to

---

[2] In subsequent litigation, the government represented that as a result of the Stipulation, the Department of Education wrote-off only the underlying NDSL in the original principal amount of $1,650 and a second student loan in the amount of $890, and that those two loan accounts were closed. Rumbin, 2016 WL 632440, at *2.

dismiss and dismissed Plaintiff's complaint with prejudice, Rumbin v. Duncan, No. 11-cv-00904, 2016 WL 632440, at *5 (D. Conn. Feb. 17, 2016). Plaintiff filed an appeal with the United States Court of Appeals for the Second Circuit, [Compl. at 3], which was dismissed due to "lack[] [of] arguable basis either in law or fact," Rumbin v. Duncan, No. 18-3488, 2019 WL 11689797, at *1 (2d Cir. July 8, 2019). He then sought certiorari from the Supreme Court, [Compl. at 3], which was also denied, Rumbin v. DeVos, 590 U.S. 905 (2020).

On March 24, 2025, Plaintiff received a letter from the Department of Education (the "March 2025 Letter") notifying him that in connection with the class action settlement in Sweet v. Cardona, No. 19-cv-03674 (N.D. Cal. filed June 25, 2019), the Department of Education had approved his Borrower Defense to Repayment application. [Compl. at 7]. The letter stated that other than confirming his address with his loan servicer, he did not need to take any further action to receive his discharge. [Id. at 7].[3]

Plaintiff now claims that the stipulation of dismissal from the 1989 action, together with the March 2025 Letter, operates as a judgment requiring that the Court discharge all his student loan debts and that the Court absolve him "of any financial liability whatsoever now and in the future." [Compl. at 4]. He also alleges that Defendants' predatory lending disrupted his education, career development, creditworthiness, and lifetime earnings, and seeks damages for harm he suffered due to Defendants' lending practices. [Id. at 8]. In support of these allegations, he claims that the University of Chicago has grown its endowment, saddled students with debt, and increased costs, and that F.H. Cann & Associates, Wells Fargo, and the Department of

[3] The March 2025 Letter also includes the telephone number for the Department of Education's borrower defense hotline and a website with the relevant hours of operation. [Compl. at 7]. Plaintiff does not state in his Complaint whether he has attempted to engage directly with the Department of Education regarding the March 2025 Letter.

Education have paid fines for "unjust and unfair credit behavior." [Id.]. Plaintiff contends that the Court is empowered to grant the relief he requests pursuant to the FCPA[4] or the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376 (2010) (codified as amended in scattered sections of the U.S. Code). [Compl. at 5].

### B. Procedural History

Plaintiff filed his Complaint in the Essex County Superior Court on July 29, 2025. [ECF No. 1-2 at 2]. Cann moved to dismiss all claims against her on November 19, 2025. [Id.]. Patterson moved to dismiss all claims against her on November 24, 2025. [Id. at 3]. Shanin moved to dismiss all claims against her on December 10, 2026. [Id.]. Cann, Patterson, and Shanin's motions to dismiss were fully briefed in the state court. [Id. at 3–4].

On January 21, 2026, the Federal Defendants removed the case to this Court, [ECF No. 1], and on January 28, 2026, they filed a motion to dismiss all claims against them, [ECF No. 9]. Plaintiff opposed the motion on March 23, 2026. [ECF No. 21].

## II. LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Maddox, 732 F.3d at 80 (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 80 (quoting

---

[4] The Plaintiff does not define "FCPA," and the Court will assume that the Plaintiff is referring to either the Foreign Corrupt Practices Act of 1977 (the "FCPA"), Pub. L. No. 95-213, 91 Stat. 1494 (codified as amended in scattered sections of 15 U.S.C.), or the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692-1692p.

Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not required, the complaint must "contain 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Consequently, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

Determining whether a complaint is facially plausible "invites a two-step pavane." Maddox, 732 F.3d at 80 (citing Grajales v. P.R. Ports Auth., 682 F.3d 40, 45 (1st Cir. 2012)). First, courts "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "Conducting a plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

Further, a pro se complaint must be "liberally construed" by a court and "'however inartfully pleaded,' [it] must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520–21 (1972)). "However, pro se status does not insulate a party from complying with procedural and

substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (citing Eagle Eye Fishing Corp. v. U.S. Dep't of Com., 20 F.3d 503, 506 (1st Cir. 1994)). Additionally, "[w]here the court cannot ascertain the nature and basis of any legitimate claims, it is under no obligation to rewrite the pleadings on the plaintiff's behalf." Sanborn v. Bowers, 788 F. Supp. 3d 153, 158 (D. Mass. 2025) (citing D.S. v. Kijakazi, No. 22-cv-12001, 2024 WL 22858, at *1 (D. Mass. Jan. 2, 2024)).

## III. DISCUSSION

Construed liberally, Plaintiff brings claims of embezzlement and fraud against the University of Chicago, and for predatory lending and "unfair credit behavior" against Wells Fargo, F.H. Cann & Associates, and the Federal Defendants. [Compl. at 8]. Although Plaintiff states that he is entitled to relief under the Dodd-Frank Act and either the FCPA or the FDCPA, he does not specify which defendants violated which of these acts, or how they did so.[5] See [id. at 5]. Plaintiff also requests the Court's assistance in executing a "judgment upon the defendants for all outstanding debts claimed by them" and that "all debts be settled immediately by the defendants." [Id. at 4].

### A. Pleading Requirements

Defendants Cann, Shanin, and Patterson contend that Plaintiff's Complaint should be dismissed because it does not contain a short and plain statement showing that he is entitled to relief. See [ECF No. 7 at 1]; [ECF No. 16-1 at 1]; [ECF No. 8-1 at 11]. Cann argues that the Complaint does not connect its factual assertions to any coherent legal theory against her or F.H. Cann, or distinguish which Defendants breached which obligations to him, and that Plaintiff's

[5] If Plaintiff intended to bring a claim under the FDCPA, he failed to identify which defendant violated the FDCPA, what provision of the FDCPA was violated, or how. See [Compl. at 5].

fraud and embezzlement allegations are entirely conclusory and lack particularity. [ECF No. 16-1 at 4]. Shanin similarly claims that the Complaint does not identify any recognized legal cause of action against the University, tie its factual assertions to any specific legal theory, differentiate between Defendants, or assert the who, what, when, where, and how details that are necessary to satisfy the heightened pleading standard for fraud. [ECF No. 8-1 at 11]. Likewise, Patterson argues that it is unclear from the Complaint what claims Plaintiff intends to assert against Patterson, that the Complaint includes no allegations as to how Patterson was involved in the events that Plaintiff describes, and that the allegations against Wells Fargo are wholly conclusory. [ECF No. 7-1 at 4]. The Court agrees that Plaintiff's pleadings are deficient.

Plaintiff's Complaint is insufficiently pleaded under the basic requirements laid out in Iqbal and Twombly. Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(l)–(3). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), to afford the defendants a "meaningful opportunity to mount a defense," Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). The "complaint should at least set forth minimal facts as to who did what to whom, when, where, and why—although why, when why means the actor's state of mind, can be averred generally." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004). The claims must be "state[d] . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). For purposes of clarity,

"each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Id. In essence, the complaint must succinctly set forth as to each defendant what he claims they did (or failed to do), where it occurred, when it occurred, and the relief he seeks from each defendant. Put another way, a complaint must clearly identify the claims and relief Plaintiff seeks as to each Defendant, and provide sufficient factual bases for each of the elements of the claims that he asserts.

Plaintiff's Complaint is written in narrative form[6] and fails to identify any specific claims against any of the named Defendants. See generally [Compl.]. Plaintiff does not set forth individual counts describing the legal causes of action he seeks to assert or the factual grounds that he alleges support those causes of action. See generally [Id.]. While Plaintiff alleges that the University of Chicago committed fraud and embezzlement by keeping "PELL/BEOG grant funds for itself," [Compl. at 8], these vague assertions—particularly concerning conduct that presumably took place 50 years ago—are insufficient to meet the heightened pleading requirements applicable to all claims of fraud, which require that Plaintiff "state with particularity" the circumstances constituting fraud, see Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). With respect to the other Defendants, as well as Shanin, Plaintiff alleges that they engaged in "predatory lending," but he does not specify under what actionable legal theory he seeks relief, state how that legal theory applies to Defendants' conduct generally, or distinguish the alleged actions of each Defendant that he contends amounted to predatory lending. See [Compl. at 2].

[6] The Court notes that while Plaintiff's allegations are written in narrative style, his account of relevant events is discombobulated to the point where it is difficult to ascertain his past or present factual situation or how exactly the Defendants, particularly Defendants Cann and Patterson, are involved.

While sympathetic to Plaintiff's circumstances, the Court cannot rewrite Plaintiff's pleadings or ferret out potential legal theories under which he might be able to proceed.

Accordingly, Plaintiff's failure to comply with the pleading requirements warrants dismissal of his Complaint insofar as he brings claims against Defendants Shanin, Cann, and Patterson. While the Court also finds that Plaintiff's allegations against the Federal Defendants do not meet the pleading requirements, for completeness, the Court will also address the Federal Defendants' sovereign immunity argument as well as Shanin's argument regarding Plaintiff's foreign judgment claim.

**B. Sovereign Immunity and Private Rights of Action**

The Federal Defendants assert that the doctrine of sovereign immunity bars Plaintiff's claims against them because Plaintiff has not shown that the United States has waived its sovereign immunity with respect to the types of claims he attempts to bring.[7] [ECF No. 10 at 4]. They further assert that certain statutes that Plaintiff references in his Complaint do not provide private rights of action. [Id.]. The Court agrees that Plaintiff's claims against the Federal Defendants are barred, both by the doctrine of sovereign immunity and by the lack of a private right of action.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). Therefore, without an express statutory waiver of that sovereign immunity, the Court lacks subject matter jurisdiction over a plaintiff's claims. See United States v. Mitchell, 445 U.S. 535, 538 (1980) ("A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" (quoting United States v.

[7] In his opposition to the Federal Defendants' motion to dismiss, Plaintiff does not address the sovereign immunity issue. [ECF No. 21].

King, 395 U.S. 1, 4 (1969))). Plaintiff "has the burden of proving sovereign immunity has been waived." Mahon v. United States, 742 F.3d 11, 14 (1st Cir. 2014); see also Soares v. Mass. Dep't of Youth Servs., No. 12-cv-10573, 2013 WL 5211556, at *4 (D. Mass. Sep. 12, 2013) ("It is the plaintiff's burden to identify a waiver of sovereign immunity, and if he is unable to do so, his claim must be dismissed on jurisdictional grounds.").

There are many statutes that grant agency-specific waivers of sovereign immunity, but the majority of cases involve one of three statutes: (1) the Administrative Procedure Act ("APA"), which waives sovereign immunity in federal court for actions against agencies or their officers that seek relief "other than money damages," 5 U.S.C. § 702; see also id. § 706 (addressing scope of judicial review and remedies); Bowen v. Massachusetts, 487 U.S. 879, 901 (1988) (holding that lawsuit by plaintiff "seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses . . . [the plaintiff] will suffer or has suffered" falls within scope of waiver under § 702); (2) the Federal Tort Claims Act ("FTCA"), which waives sovereign immunity for claims for money damages caused by tortious acts of federal employees acting within the scope of their employment, 28 U.S.C. § 1346(b)(1); or (3) the Tucker Act, which waives sovereign immunity for actions seeking money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort" and requires such actions to be brought in the United States Court of Federal Claims, 28 U.S.C. § 1491(a)(1).

Here, it is not entirely clear under which statutory scheme Plaintiff seeks relief; however, to the extent he intends to bring claims against the Federal Defendants pursuant to the FCPA, the FDCPA, or the Dodd-Frank Act, he cannot proceed against the federal government under any of

these statutes. "The FCPA does not provide a private right of action," Abdelalim Mostafa v. SEC, No. 24-cv-00164, 2024 WL 1701551, at *2 (D.D.C. Apr. 15, 2024), and, because Plaintiff has not alleged that he is a whistleblower, the same is true for the Dodd-Frank Consumer Financial Protection Act,[8] Flynn v. Berkley Vacation Resorts, Inc., No. 25-cv-60028, 2025 WL 3091000, at *3 (S.D. Fla. Aug. 4, 2025). Insofar as Plaintiff attempts to bring a claim under the FDCPA, Congress has not waived the government's sovereign immunity with respect to the FDCPA, and the act excludes from its definition of a debt collector "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 663–64 (5th Cir. 2007) (quoting 15 U.S.C. § 1692a(6)(C)). Finally, to the extent Plaintiff seeks to bring a contract claim against the Federal Defendants for allegedly violating an agreement made in connection with earlier litigation, any lawsuit based on a contract with the United States that exceeds $10,000 in value (as would be the case here, because Plaintiff asserts that he is owed $12,000 to $14,000 from the Federal Defendants, [Compl. at 10]) must be brought in the United States Court of Federal Claims. Massachusetts v. Nat'l Insts. of Health, 770 F. Supp. 3d 277, 291 (D. Mass. 2025) (citing 28 U.S.C. § 1491(a)(1)). Accordingly, the Court does not have jurisdiction over any claims that Plaintiff has brought against the Federal Defendants, and his claims against them must be dismissed.

---

[8] There is also "no private right of action to bring a direct claim under the Consumer Financial Protection Act." Trivedi v. Gen. Elec. Co., No. 19-cv-11862, 2020 WL 9744754, at *10 n.11 (D. Mass. Aug. 13, 2020), report and recommendation adopted, No. 19-cv-11862, 2021 WL 2229088 (D. Mass. May 27, 2021), aff'd, No. 21-1434, 2022 WL 1769136 (1st Cir. May 3, 2022)

Because the Court finds that the doctrine of sovereign immunity and the lack of private rights of action in the FCPA and the Consumer Protection Act bar Plaintiff's claims against the Federal Defendants, the Court will not reach the Federal Defendants' res judicata argument, see [ECF No. 10 at 2–4].

### C. Enforcement of Judgment

In his Complaint, Plaintiff asserts that the letter he received regarding the Sweet v. Cardona settlement agreement is a "foreign judgment" that the Court must enforce against Defendants.[9] [Compl. at 4]. Shanin contends that the Sweet v. Cardona settlement "represents an agreement and administrative process solely between [the Department of Education] and individual borrowers" and does not impose any duties on the University of Chicago or authorize any enforceable relief against the University of Chicago. [ECF No. 8-1 at 7]. Further, Shanin argues that Plaintiff does not identify any contractual provision, regulation, or other legal avenue to transform the notice he received about the Sweet v. Cardona settlement into a judgment or obligation against Defendants. [Id.].

Article IV of the United States Constitution provides that

> Full Faith and Credit shall be given in each State to . . . judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. art. IV, § 1. Further, 28 U.S.C. § 1963 "authorizes federal courts to register certain judgments entered by certain other courts," Woo v. Spackman, 988 F.3d 47, 50 (1st Cir. 2021), and the statute states that "[a] judgment in an action for the recovery of money or property

---

[9] At various points in the Complaint, Plaintiff also alludes to a stipulation of dismissal from past litigation in which he was involved, see, e.g., [Compl. at 3]; however, he does not appear to seek enforcement of this "judgment," nor is it clear that he could before this Court.

entered in any court of appeals, district court . . . may be registered by filing a certified copy of the judgment in any other district," id. (citing 28 U.S.C. § 1963). Under 28 U.S.C. § 1738,

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. Where another court's order meets the requirements of § 1783, that order is given preclusive effect, and the court hearing the issue may order the payment of any proceeds from that judgment. See United States v. One Assortment of 93 NFA Regulated Weapons, 897 F.3d 961, 970 (8th Cir. 2018) ("The district court did not err in relying on [another court's] civil judgment . . . in [ordering that] the proceeds from [that judgment be paid to plaintiff.]").

Here, to the extent Plaintiff seeks enforcement of a "foreign judgment," including in relation to the Sweet v. Cardona settlement, he has submitted a notice he received from the Department of Education regarding his entitlement to settlement relief for certain relevant federal student loans, but has not filed a copy of any judicial record with a clerk attestation and certificate of a judge of the court that the attestation is in proper form. [Compl. at 7]. Because the notice does not include the requisite attestation or judicial certificate, [id.], the Court cannot enforce it as a foreign judgment.[10]

---

[10] To the extent that Plaintiff seeks to move the Court to enforce his claim or otherwise obtain relief from the Sweet v. Cardona settlement, he has not shown that this Court has jurisdiction to order such relief. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994) ("Enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").

## IV. CONCLUSION

For the foregoing reasons, the Federal Defendants' motion to dismiss, [ECF No. 9], Cann's motion to dismiss, [ECF No. 16], Patterson's motion to dismiss, [ECF No. 7], and Shanin's motion to dismiss, [ECF No. 8], are **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED**.

**SO ORDERED.**

July 22, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE